EASTERN DIST.<br>
June, 1836.<br>
<br>
GASQUET ET AL.<br>
vs.<br>
DIMITRY.

---

### GASQUET ET AL. vs. DIMITRY.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

According to the provisions of the Spanish law, (Partida 4, 11, 1 and 17) the wife has a tacit mortgage on the property of her husband, for the restitution of both her dotal and paraphernal effects.

The part of the legislative act of 1813, which requires marriage contracts to be recorded, in order to have effect as a mortgage against third persons, on the property of her husband for the restitution of the wife's dotal or paraphernal effects, was repealed by the adoption of the Louisiana Code, in 1825.

Where the wife signs an act of mortgage with her husband, given to secure a debt for his benefit, in which she renounces formally all her rights, privileges and mortgages on the property, ceding and transferring them to her husband's creditor : *Held*, that this is a contract entered into by the wife conjointly with her husband, *binding* herself for his debt, which is expressly prohibited by the Louisiana Code, article 2412; and such renunciation on her part is null and void.

The wife cannot validly bind herself for her husband or for his debts, even with his consent; for this would place her rights entirely under his control.

This case arises under a rule taken by the purchaser of two lots and improvements thereon, seized and sold by the plaintiffs, as the property of A. Dimitry, on the sheriff and the creditors of Dimitry, who had mortgages to show cause why they should not be erased and cancelled.

74

Mrs. Dimitry, the wife of the defendant, made opposition to the rule, on the ground that she had a prior mortgage to that of the plaintiffs, under which the property was sold, resulting from a marriage contract, passed before Pedesclaux, notary public, the 4th April, 1803. She also asserted that she had other mortgages, anterior to that under which the premises were sold.

The evidence showed that Mary-Ann Dragon, (now Mrs. Dimitry) and Andreas Dimitry, were married the 10th October, 1799. That on the 4th April, 1803, the father, by notarial act entitled, *declaratoria de dote,* reciting the marriage of the parties without any constitution of *dot* or dowry, gives to his daughter, Mrs. Dimitry, seven thousand dollars in money and two slaves, which the husband acknowledges to have received in advancement of his wife's hereditary rights.

In February, 1834, the wife obtained a judgment of separation of property from her husband, and for the sum of seven thousand dollars, with interest and mortgage.

On the 26th November, 1832, Dimitry mortgaged the lots of ground mentioned in the order of seizure and sale, situated on the corner of Hospital and Conde streets, in New-Orleans, to one Paul Zoits, to secure him against an endorsement of two notes, amounting to six thousand two hundred and forty dollars. Mrs. Dimitry joined her husband in the act, and renounced her right of mortgage to the property. She declares that she renounces formally, as well for herself as for her heirs and assigns, all the rights, privileges and mortgages which she has or may have, to or on the property mortgaged, ceding and transferring them to said Zoits and his assigns.

Zoits transferred all his right, title and interest in this mortgage to the present plaintiffs, who had the mortgaged property seized and sold on the 5th February, 1834, when John F. Miller became the purchaser. He now seeks to have the mortgages erased and cancelled by the sheriff.

The District Court decided, that in its opinion, the sheriff had a right to erase the mortgages under the circumstances of the case, and made the rule absolute. Mrs. Dimitry appealed.

*Benjamin* and *Schmidt* for the plaintiffs.

1. The plaintiffs were the first and anterior mortgagees, and the sheriff is bound to release and cancel the mortgages of the subsequent mortgagees in favor of the purchaser. *Code of Practice, article* 708.

2. The subsequent mortgagees have no right to contest the plaintiff's right and privilege, as first mortgagor, when his debt and interest absorbs the whole of the mortgaged property.

*Canon,* for the opponent, Mrs. Dimitry, contended that her legal mortgage was still in full force ; and that her renunciation was null and void, being prohibited by the *article* 2412 *of the Louisiana Code.*

*Bullard, J.,* delivered the opinion of the court.

The plaintiffs having caused to be sold, under an order of seizure and sale, a certain lot of land belonging to the defendant, Dimitry, took a rule on the present appellant, Madame Dimitry, to show cause why the sheriff should not erase her mortgage on the property sold. She shows for cause that she has a prior legal mortgage on the property of her husband, resulting from her marriage contract, and recognised by judgment of a competent tribunal, which had pronounced a separation of property between them.

The certificate of the register of mortgages sets forth a general mortgage in favor of Madame Dimitry on the property of her husband, resulting from an act before Pedesclaux, notary, dated November, 1803, by which the husband acknowledges to have received from his wife's father seven thousand dollars on account of his wife. This act was not recorded in the office of the register of mortgages, until after the date of the special mortgage in favor of Zoits, which was afterwards transferred to Gasquet & Co.

The plaintiffs, on the other hand, showed that Madame Dimitry united with her husband in the act of mortgage to Zoits, and consented to it, expressly agreeing to renounce all prior claim on the property in favor of the mortgagee, and they contend that her renunciation is binding on her. The

EASTERN DIST.   June, 1836.

GASQUET ET AL. *vs.* DIMITRY.

question, whether the court erred in making the rule absolute, and directing the sheriff to erase the mortgage of the wife, involves two inquiries : 1st, whether she has exhibited evidence of the legal or tacit mortgage on the property of the husband, of a prior date to the special mortgage of the plaintiff; 2d, whether her renunciation, made in the act of mortgage to Zoits, jointly with her husband, and with his consent, be binding and obligatory upon her.

I. The document referred to as forming the basis of the rights of the wife is dated April 4, 1803, and purports to be a *declaracion de dote.* It recites that the parties had been married on the 10th October, 1799, without any constitution of dower, and the husband by that act acknowledges to have received from the father of his wife the sum of seven thousand dollars, and two slaves, in advancement of her hereditary rights. In the judgment of separation of property, this instrument is referred to as proving the right of the wife to recover from her husband the sum of seven thousand dollars, with the benefit of a legal mortgage.

*According to the provisions of the Spanish law, (Partida 4, 11, 1 and 17,) the wife had a tacit mortgage on the property of her husband, for the restitution of both her dotal and paraphernal effects.*

It is not necessary to inquire whether this sum constituted, properly speaking, the dower, or the paraphernalia of the wife, inasmuch as both are equally secured by tacit mortgage on the property of the husband, according to the law in force at that time. *Partida* 4, *title* 11, *law* 1 and 17.

*The part of the legislative act of 1813, which requires marriage contracts to be recorded, in order to have effect as a mortgage against third persons on the property of her husband, for the restitution of the wife's dotal or paraphernal effects, was repealed by the adoption of the Louisiana Code, in 1825.*

The objection that this instrument was not recorded according to the provisions of the act of 1813, but remained dormant until after the date of the mortgage given to the plaintiffs, is sufficiently answered by the fact, that the part of that act which required a document of this character to be recorded, in order to give to the wife a tacit mortgage in relation to third persons, was repealed by the new code, and that in the meantime the plaintiffs had acquired no right on the property in question.

II. The counsel for the appellant, in support of the position that the agreement on the part of the wife to renounce her claims on the mortgaged property is null and void, relies upon article 2412 of the Louisiana Code, which is in the following words : " The wife, whether separated in property

by contract or by judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage." The question thus presented is to be decided by us without reference to the laws of Toro, which have no longer here the force of laws, and independently of former decisions of this court, while guided by the Spanish jurisprudence ; but we are called on to say, what in our opinion is the law of the land, on this subject, as established by the code, standing by itself.

That this is a contract entered into by the wife, jointly with her husband, *binding herself for* a debt contracted by him, we do not doubt, although she does not agree to pay the debt out of her own property, yet she consents to renounce her own real right in the property, in favor of the creditor, and thereby furnishes a pledge for the better security of this debt. She declares that she renounces formally, as well for herself, as for her heirs and assigns, all the rights, privileges and mortgages which she has or may have, to or on the property mortgaged, ceding and transferring them to the said Zoits and his assigns. This contract, while it tends to afford a better security for the ultimate payment of the debt contracted by the husband, contains the immediate aliena-tion by the wife, of a real right in the thing, "*jus in re*," for a consideration not personal to herself, but for the benefit of the husband or his creditor. She may be said, therefore, to have bound herself for a debt contracted by the husband.

The article of the code relied on is prohibitory in its terms, declaring the incapacity of the wife to bind herself in such cases, and the 12th article declares that whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed.

But to this it is answered by the counsel for the appellees, 1st, that the wife's incapacity to contract is removed by the consent of the husband ; 2d, that the article 2412, being intended for the protection of married women, they have a right to renounce its benefit ; that such renunciation is not prohibited by law ; and that in this case, the wife did formally renounce the benefit of that law and all others in her favor.

EASTERN DIST.
*June*, 1836.

GASQUET ET AL.
*vs.*
DIMITRY.

Where the wife signs an act of mortgage with her husband, given to secure a debt for his benefit, in which she renounces formally all her rights, privileges and mortgages on the property, ceding and trans-ferring them to her husband's creditor : *Held,* that this is a contract entered into by the wife conjointly with her husband, *binding* herself for his debts, which is express-ly prohibited by the Louisiana Code, article 2412, and such renunciation on her part is null and void.

EASTERN DIST.
June, 1836.

GASQUET ET AL.
vs.
DIMITRY.

The wife can-
not validly bind
herself for her
husband or for
his debts, even
with his consent;
for this would
place her rights
entirely under
his control.

In answer to the first part of this argument, it may be said that the incapacity of the wife to contract in ordinary cases for her own benefit, without the consent of the husband, is removed by his consent, and even that his consent is in some cases implied. But her incapacity to bind herself for him, and jointly with him, for a debt of his contracting, rests on different principles. The proposition that the wife may validly bind herself for her husband, provided he consents to it, appears to us not sustainable. Such a doctrine would place the rights of the wife under the complete control of the husband.

The principle next invoked, to wit : that persons may renounce what the law has established in their favor, is, with certain limitations, established by the 11th article of the code. But the same article declares that individuals cannot by their conventions derogate from the force of laws for the preservation of public order, or good morals, and it permits the renunciation only, when it does not affect the rights of others, and is not contrary to the public good.

It must be confessed that the rule thus laid down as the guide of the tribunals, when called on to decide in what cases a renunciation of the benefits of particular laws may be permitted, or in other words, what laws are for the public good, and cannot be derogated from by the agreements of individual citizens, is extremely broad and vague, and would seem to demand from judges the duty sometimes to look beyond the text, and to inquire into the general policy of the law, and the motives of the legislator.

In every well organised state, those laws which establish the order of hereditary succession, which regulate the capacity to dispose by last will, and particularly, those which define the capacities and incapacities of particular classes of persons, and especially of minors and married women, in reference to contracts, would seem to stand first in rank of those rules involving the great interests of public order, and essential to the welfare of society. If those persons could by their own act remove disabilities, under the spurious shape of a renunciation of the promised protection of the laws, it is

manifest that such laws themselves would be wholly <span style="float:right">EASTERN DIST.<br>June, 1836.</span> nugatory. It would present the extraordinary anomaly of a person declared incapable of making a particular contract, yet <span style="float:right">GASQUET ET AL.<br>vs.<br>DIMITRY.</span> endowed with capacity to remove his own disability at will. In cases where the rights of third persons would be affected, little or no difficulty would arise in the application of the rule, and in reference to laws strictly prohibitory, it is not easy to reconcile, in any case, the right of individuals to derogate from their form and application, with the positive declaration of the code, that whatever is done in contravention of such laws shall be void, although such nullity be not expressly denounced.

The view we have taken of this question, coincides substantially with the opinions of foreign jurists, whose writings we have had occasion to consult. 3 *Merlin's Repertoire, verbo Dérogation.* 1 *Toullier,* page 87 *et seq.*

To these authorities may be added that of Gomez in his Commentary on the 61st law of Toro, in which this question is treated *ex professo.* He concludes that the wife cannot in any form, validly bind herself for her husband, because such contract embraces an indirect donation in favor of the husband, which is forbidden and reprobated by law. *Gomez ad Leges Tauri,* 636.

Such appears to have been the construction put upon this part of the code by the legislature, who have thought it necessary and expedient to remove the disability of wills, in relation to contracts with certain banking companies, incorporated since the promulgation of the code.

We therefore conclude, that the appellant is not bound by her contract, and that the nullity of that agreement is not cured by her renunciation. But we cannot accede to her prayer, to decree to her the notes given for the price of the property sold, as she is bound to pursue a particular order, in discussing the property of her husband.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled and reversed; that the rule taken on the appellant be discharged with costs in both courts.