OF THE

# TERRITORY OF NEW MEXICO.

## JANUARY TERM, 1857.

## MANUELA ANTONIA CHAVEZ *v.* WM. S. McKNIGHT AND JOSE MARIA GUTIERES.

NON-JOINDER OF HUSBAND IN SUIT BY WIFE.—Where a wife sues in her own name without joining her husband, and no objection is made on that ground in the court below, such objection can not be made in the supreme court.

CIVIL LAW PREVAILS IN NEW MEXICO.—The civil law is established by legislative enactment as the rule of practice in all civil cases in this territory.

WIFE MAY SUE HUSBAND BY CIVIL LAW.—Although by the civil law a wife is, in general, prohibited from suing without her husband's consent, she is not thereby prohibited from instituting suits against him and other defendants, where she has a legal or equitable cause of suit.

WIFE'S LIEN TO SECURE DOTAL PROPERTY.—Under the civil law a wife has a tacit lien or mortgage on her husband's property, of the same efficacy as a written mortgage, to the amount of the dotal property of which he became possessed through her.

EXTENT OF LIEN IN SUCH CASES.—Such lien of the wife extends to property alienated by the husband before dissolution of the community and to that acquired by the community, as well as to the husband's property, if necessary to satisfy the lien.

REGISTRATION OF SUCH LIEN UNNECESSARY.—No registration of such lien is necessary, the marriage being itself ʼsufficient notice of it.

SUCH LIEN NOT DIVESTED BY PROCESS OF CREDITOR. — The wife's lien in such cases is not divested by the levy of process by a creditor of the husband nor by a sale on execution.

GANANCIAL PROPERTY, WHAT IS. — By ganancial property is meant that which is increased or multiplied during the marriage.

INJUNCTION TO ENFORCE WIFE'S DOTAL LIEN.—An injunction lies at the
suit of a wife to prevent a sale on execution of the husband's property
and of that acquired by the community by one of his creditors, where the
amount of such property is not sufficient to satisfy her lien for her dot,
brought to her husband.

APPEAL from the district court for the first judicial dis-
trict. The opinion states the case.

*Ashurst and Watts,* for the complainant.

*Smith and Tompkins, contra.*

By Court, BROCCHUS, J.:

This was a bill in chancery before Chief Justice Deaven-
port, in the district court for the first judicial district, by
Manuela Antonia Chavez, seeking relief against two execu-
tions upon judgments obtained by William S. McKnight
against Jose Maria Gutieres, the husband of the petitioner,
which·executions were levied upon property in the posses-
sion of said Jose Maria Gutieres, and upon which the said
Manuela Antonia Chavez claimed to have a prior lawful
lien. The petitioner alleged that some time in the year
1826 she was married to one Jose Maria Gutieres, in the
territory of New Mexico, and that she had lived with him
as his lawful wife from the period of their marriage up to
the time of the filing of her petition; that by virtue of said
marriage her said husband became possessed of property
belonging to her and inherited by her from her father,
Francisco Chavez, to the amount of about thirty thousand
dollars, and which her said husband received as her dot
or jointure, and as part of her inheritance; that said prop-
erty was inventoried at the time of its delivery to her hus-
band by the representatives of her said father, in conform-
ity to the laws and customs in force at that time in the ter-
ritory of New Mexico; that her said husband, in the year
1852, became security to one William S. Knight, on behalf
of one Jose Gutieres, for a large amount; that the said Will-
iam S. McKnight prosecuted suits against the said Jose
Gutieres and Jose Maria Gutieres, and obtained judgments
against them in the district court for the county of Santa

Ana, one for five thousand five hundred and fifty-one dollars and eighty-nine cents, and the other for one thousand nine hundred and fifty-two dollars and fifty-nine cents, and having taken out executions on the said judgments, proceeded to levy the same on the personal property of her said husband, which she alleged ought to be and of right was hers, inasmuch as her said husband had not at the time of the levying of the said executions, or at the time of her application for relief against the same, a sufficient property to pay the amount which he received from her as her dot or jointure. The petitioner further alleged that the property levied upon by the said executions was part of the produce of the property conveyed to her said husband at the time of her marriage as her dot, and set up a claim of a tacit hypothecation or mortgage upon the same, and she prayed that the said William S. McKnight and Jose Maria Gutieres be made parties respondent to her bill; that an injunction be issued to restrain the enforcement of the said executions against the said property, and that such further relief be granted as the nature and circumstances of the case might require.

In accordance with the prayer of the petitioner a temporary injunction was granted restraining and enjoining the sale of the property under the executions aforesaid, and the said Wm. S. McKnight and the said Jose Maria Gutieres were summoned to appear before the United States district court for the first judicial district of the territory of New Mexico, to answer the allegations made in the petition exhibited by the said complainant against them. Upon the hearing of the cause, one of the defendants, Wm. S. McKnight, the plaintiff in the executions, appeared by his counsel and demurred to the allegations as set forth in the petition of the complainant as insufficient in equity to entitle her to any relief. The court held that the matters and things contained in the bill were sufficient in equity to enable the complainant to maintain the same; therefore the demurrer was overruled, and the defendants given leave to answer the bill. The defendants declined answering, and the court thereupon adjudged and decreed that the injunc-

tion be made perpetual, and that the plaintiff have execution against the defendants for the costs of this suit. The defendants excepted to the ruling of the court and appealed therefrom.

In the argument of this cause the counsel for the defendant have denied the right of the complainant to sue without the consent of her husband. No exception can be taken in an appeal to any proceeding in the circuit court, except such as shall have been expressly decided in that court: Act defining judicial powers, Revised Code of New Mexico, sec. 5, p. 114. The supreme court, in appeals or writs of error, shall examine the record, and on the facts therein contained alone shall award a new trial, reverse or affirm the judgment of the circuit court, or give such other judgment as to them shall seem agreeable to law: Id., sec. 7, p. 116. The defendant in the court below did not contest the right of the complainant to bring the suit in her own name, without the consent of her husband, but on the contrary tacitly confessed that right and demurred to the allegations set forth in her petition as insufficient in equity to entitle her to the relief which she sought. The only question presented to the court below was as to the sufficiency of the allegations to maintain the suit. That question alone was decided by the court, and on the exception to that decision only, is this appeal founded. This court, therefore, even if its opinion inclined in favor of the proposition argued by counsel of the appellant, would seem to be precluded from the adjudication of that question by the law defining the judicial powers of the courts of this territory. We, however, have no reluctance in expressing our opinion upon that point, although our views thereupon may be regarded as *obiter dicta*.

According to the civil law, a woman, on marrying, parts with many of her civil rights, and amongst the rights alienated by the conjugal association is that of appearing generally in court as plaintiff or defendant, alone or without the consent of her husband. But she does not part with the right of prosecuting suits against her husband when causes of action against him arise. Escriche, under the head

of Mujer Casada, 451, says: "The woman who marries alienates from herself the power of exercising alone the greater portion of her civil rights. The interest of the conjugal association, and the deference which she owes to her husband, require her to do nothing of importance without his sanction; therefore the wife can not, without the concurrence of her husband, make a contract, or withdraw from any that she may have made, or release parties therefrom, or make a *quasi* contract, or enter into litigation *stare in judicio*, demanding or defending by herself or attorneys. * * * But the wife does not require the express permission of her husband in order to proceed against him for his civil or criminal action."

Such are the well-established principles of the civil law. Although a wife is thereby prohibited from entering alone into litigation with other persons without the consent of her husband, she is not prohibited from instituting and maintaining suits against him whenever she may have a legal or equitable cause of action. The civil law is commended to our highest admiration by the humane regard which it so justly and carefully maintains on behalf of the rights of woman. In pursuance of its wise and just policy towards the sex, it throws its panoply around the married woman to protect her against injustice, tyranny, and aggression upon her rights on the part of her husband. When her estate is imperiled by his imprudence or extravagance, she is invested with power to assume the character of complainant against him, and as such to enter the courts of the country and demand their protection. In such a character, and in such a cause, we conceive that we now find Manuela Antonia Chavez here, with her bill of rights, in the name of the law whose principles are thus commended to our admiration, asking the protection of this court against the consequence of the improvidence of her husband, Jose Maria Gutieres.

By the allegations of the bill it appears that at the time of her marriage with him he became possessed of a large amount of property as her dot. Upon the faith of that property he became security for a large sum of money. As

such security he was sued and prosecuted to execution. The executions thus obtained were levied upon property in his possession, which she claims as equitably belonging to her by virtue of her dotal right, inasmuch as he did not then possess a sufficiency of property to enable him to make restitution to her of the amount of the dot which she brought to him at the time of their conjugal association. She prays in her petition that he be made a party respondent to her bill and summoned to answer the allegations therein contained. He stands in the attitude of a party defendant in the cause, and is constructively and virtually charged with squandering or improvidently using her dotal property, by applying it to purposes foreign from those for which it was placed in his hands; by making it liable for securityship, while its legitimate purpose was to conduce to their conjugal contentment—to secure their comfort, to protect them from want, to enable them to provide amply for their family, and to promote their general prosperity and happiness.

It is not difficult to conceive that the court below, upon a full hearing of the cause, might have decreed in behalf of the complainant, beyond the express prayer of her petition for an injunction to prevent the sale of the property levied upon by the executions. If the cause had proceeded to a final hearing upon bill, answer, and proofs, such a state of facts might have been disclosed as to have made it the duty of the court, under the prayer for general relief, to render a decree against the husband to prevent him from dissipating and wasting the property in his possession, to the prejudice of the rights of the complainant, as set forth in the allegations of her bill. Under the general prayer for relief, the court might have extended its decree beyond the specific relief prayed for by the complainant, so as to save her the trouble and expense of similar suits for the future. If the defendants had put in their answer to the bill, and the case had gone on to be heard upon the proofs, a state of facts might have been developed in reference to the extravagance and improvidence of the husband, which would have inclined the complainant to ask at the bar such a decree as would have placed her property, then in the

hands of her husband, beyond his control—beyond the reach of his improvidence and extravagance—and such a power the court could have exercised under the general prayer, if the particular relief asked for was authorized by the facts stated in the petition: Barton's Suit in Equity, 46. The allegations in this bill, it seems to us, were sufficient for that purpose. A separation of the dowry and other goods which the wife brought to her husband, and left with him on condition that he should bear the charges of the marriage, ought to be decreed in a court of justice on sufficient proof that the bad condition of the affairs of the husband and the smallness of his estate, put the property of the wife in danger: 1 Domat Civil Law, 394, 395. Such a condition of things might have been shown within the allegations of the complainant's bill if the cause had proceeded to a hearing upon the averments, the answer, and the proofs. The husband then stands in the attitude of a defendant; he is made so, not only by the special prayer that he be made a party defendant, but also by the nature of the averments contained in the petition.

This seems clearly to be a case in which the wife may sue without the consent of her husband, for it is not to be presumed that the husband would have given his consent to the institution of a suit against himself. The complainant was therefore properly in court demanding a judicial investigation of the allegations set forth in her bill. From all that appears on the record, the allegations contained in the bill, in default of the answer of defendants, are to be taken *pro confesso* as to all matters of fact therein alleged—that the complainant, Manuela Antonia Chavez, at the time of her marriage to Jose Maria Gutieres, placed in his possession property belonging to her and inherited by her from her father to the amount of about thirty thousand dollars, and that he received the same as her *dote* or jointure and as part of her inheritance. By the civil law, which is recognized and established by legislative enactment as the rule of practice in this territory, in all civil cases the wife acquires a tacit lien or mortgage upon the property of her husband to the amount of the dotal property of which he

became possessed through her: Febrero, vol. 3, p. 366, sec. 10; White Recopilacion, vol. 1, pp. 139, 140.

The recognition of this principle and the maintenance of the right of married women to such an- *hipotecacion* runs through all the elementary authorities on the civil law. According to the provisions of the Spanish law, Partidas, 4, 11, 1, 17, the wife had a tacit mortgage on the property of her husband for the restitution of both her dotal and paraphernal effects: *Gasquet et al.* v. *Dimitry*, 9 La. 588; Benj. & S. Dig. 437. This right of the wife to a tacit mortgage is so fully and clearly maintained, both by elementary and judicial authorities, and, indeed, seems to have been so far conceded by the counsel for appellant as to render amplification upon that point entirely unnecessary, and the law being established, we will proceed to inquire into its application to this case. The complainant in her bill avers that, at the time of her marriage, her husband received as her dot or jointure, and as part of her inheritance, property to the amount of about thirty thousand dollars, and the allegation not having been denied, it stands as confessed, and therefore the law as laid down, and the facts as confessed, establish a tacit lien or mortgage upon the property of the husband, Jose Maria Gutieres, in favor of the wife, Manuela Antonia Chavez, to the amount of her dot, as set forth in her bill. The binding force and effect of a tacit mortgage is equal to that of an express written mortgage, and attaches as strongly to the property upon which it has its lien: Febrero, sec. 6, p. 365; and the general mortgage of the wife for her dower extends to property alienated by her husband before the dissolution of the community and to the property acquired by the community, as well as that which belonged to her husband separately: *Cassou* v. *Blanque*, 3 Mart. 392; Benj. & S. Dig. 436. So jealous and careful does the law seem to be in the protection of the rights of the wife, that no registration or record of her mortgage is required, but the marriage alone is left to give notice of her lien upon the property of her husband. Where a husband has alienated paraphernal property of his wife and receives the proceeds, she has a

lien and privilege therefor on his estate, nor is it neces-
sary that any evidence of her claim be registered: *Dreux* v.
*Dreux's Syndics*, 3 Mart. (N. S.) 239; Benj. & S. Dig. 436.
And in this respect there is no difference between her dotal
and her paraphernal rights. Her mortgage arising out of her
paraphernal and dotal rights stands upon the same footing
as regards recording the evidence of them; her legal mort-
gage attaches in both cases without being recorded: *Pain*
v. *Perret*, 10 La. 303; Benj. & S. Dig. 438.

Having seen, then, that a tacit mortgage is as highly
favored by the law, and attaches as strongly as an express
recorded mortgage, let us see how far it may be affected by
the claims of common creditors. In the case of *Blanchard*
v. *Blanchard et al.*, 6 La. 298, it is maintained that a sale
of mortgaged property by the sheriff under execution, at
the suit of another and ordinary creditor, does not extinguish
a legal mortgage, *a fortiori* the levying of an attachment
on it can not: Benj. & S. Dig. 447; and the principle is car-
ried still further in favor of the mortgage of the wife in the
case of *Eastin* v. *Eastin's Heirs*, 10 La. 198, where it
is laid down, that if the legal mortgage of the wife attach
to property before the sale, the court will give effect to it on
the property in the hands of the vendee of the husband:
Benj. & S. Dig. 437.

Such seems to be the general current of authority upon
this subject in support of the principle that the lien acquired
by the mortgage upon the property mortgaged can not be
divested either by the levying of process upon the mortgaged
property, or the sale thereof by the mortgagor, or under
execution. It is alleged in the complainant's bill that the
property levied upon by McKnight's executions was part
of the produce of the dotal property which she brought to
her husband at the time of their marriage, and in view of
that averment, the counsel for appellant maintain that the
property levied upon was of the character of *bienes de ganan-
cias*, and therefore liable to the execution. By ganancial
property we understand that which is increased or multi-
plied during marriage: White Recopilacion, 61; but in
view of the allegation of the bill, that the husband had not

property enough at the time of the levying of the executions to satisfy the claim or lien of his wife for her dot, the question whether the property levied upon was ganancial or not becomes immaterial, for the mortgage of the wife for her dower extends to the property acquired by the community, as well as that belonging to her husband separately: *Cassou* v. *Blanque,* 3 Mart. 392; Benj. & S. Dig. 437. There would be a great and glaring inconsistency in giving the wife a mortgage upon the property of the husband to the full amount of her dot, and then making property acquired by the husband liable to the debts of ordinary creditors, while the entire amount of his estate would be insufficient to enable him to make restitution of her dotal property. The proposition is entirely and palpably repugnant to the law of the tacit mortgage of the wife, as applied to this case; for it is obvious, under the averments of the bill, that to take away the property levied upon would increase an already existing insolvency of the husband to pay to his wife the amount of the dot, which she alleges having brought to him on their marriage. It was argued by counsel for the appellant, that the tacit lien or hypothecation contended for on the part of the appellee could not be enforced against creditors, but that the property hypothecated must be reduced, to be her property, by bill in chancery, or else the lien must be lost. No authorities were cited in support of the argument, and it stands in direct antagonism to all the law and reasoning which has been brought to bear upon the subject. We can not conceive that it was the duty of the appellee to seek the aid of equity, in the enforcement or protection of her lien, at any earlier period than the filing of her bill in this case, when she found a creditor of her husband about to interfere with her rights. No error appearing upon the record, the judgment of the court must be affirmed with costs.