SUCCESSION OF SARAH ANN PENNY—FOSTER AND WIFE, Administrators, *v.* A. L. BLOOM et al.*

> The wife is liable for all debts incurred for the improvement of her separate estate, advances made for the payment of debts and supplies of necessaries for a plantation, which is her paraphernal property, whether she has retained the administration of her paraphernal property or entrusted it to her husband.
>
> Art. 2377 of the Code has reference only to the settlement of the accounts between husband and wife, and does not control the action of creditors.
>
> A witness cannot be permitted to state his belief as to the correctness of an account, he must testify to his knowledge of facts and not to his belief of them.
>
> The possession by the drawee of a draft drawn by a planter upon his merchant or factor, in favor of a third person, is *prima facie* proof of the draft having been paid by the drawee.
>
> There is now no question of the right of a married woman, above the age of majority, to renounce her mortgage upon the property of her husband, in favor of a third person.

APPEAL from the District Court of the Parish of East Feliciana, *Ratliff,* J. *Fuqua & Kilbourne* and *J. McVea,* for plaintiffs. *Muse & Hardee, J. B. Smith* and *George S. Sawyer,* for defendants and appellants.

BUCHANAN, J. This case is before us upon oppositions to an account of administration. There are six distinct parties appellant.

1. *Dr. Iluff* complains that his opposition, founded upon a bill for medical attendance, has not been sustained to the full extent. An examination of the evidence has not satisfied us that the District Judged erred.

2. *Charles Knapp ;* 3. *Bowman & Gair.* These two oppositions are similar to each other in principle. *Knapp* furnished a sugar mill, saw mill and steam engine ; and *Bowman & Gair* erected the buildings to contain the same. This work was done at the request of *Albert G. Penny,* and during the existence of the community between himself and the deceased *Sarah Ann Penny,* but upon a tract of land which was the separate property of *Mrs. Penny.* Subsequently to the furnishing of the materials and completion of the work, the matrimonial community was dissolved by judgment of court, in a suit instituted by *Mrs. Penny* against her husband for separation of property. The administrators of *Mrs. Penny's succession* resist the payment of these claims, on the ground that they are debts of the community. The opposers maintained that *Mrs. Penny's* estate is liable, because her separate property was enhanced in value by the sugar mill and saw mill erected upon the same. The contracts of *Knapp* and *Bowman & Gair,* were reduced to writing and recorded, as required by Article 2746 of the Code.

The doctrine of the case of *Waggaman* v. *Zacharie,* 8 Rob. 181, is, that the wife's estate is liable for the increased value which her separate property has received by the improvements placed upon it during the marriage ; and this increased value is not to be taken as synonimous with the costs of the improvements. C. C. 2377.

But the cases of *Dickerman* v. *Reagan,* 2 An. 440 ; *Dailey* v. *Pearson,* 5 An. 125 ; and *Patterson* v. *Frazier,* 8 An. 512, have gone further, and are understood to establish the doctrine, that the wife is liable for all debts incurred for the improvement of her separate estate, advances made for the payment of such debts, and supplies of necessaries for a plantation, which is the paraphernal property of

*This case was omitted in the decisions of 1857.

the wife; whether the wife retained in her own hands the administration of her paraphernal estate, or entrusted it to her husband according to these latter authorities, the appellants *Knapp* and *Bowman & Gair* are entitled to recover of *Mrs. Penny's* estate. The Article 2377 of the Code, upon which the case of *Waggaman* was decided, was held in the latter cases to have reference only to the settlement of the accounts between husband and wife, and not to control the action of creditors.

4. *Slark, Day & Stauffer.* The draft of *A. G. Penny,* held by these opponents, is proved to have been for iron, &c., used in erecting the sugar mill, saw mill and steam engine, upon the plantation of *Mrs. Penny.* The draft not being paid at maturity by the acceptor, was duly protested and the drawer notified. For the reasons given above, these opponents are entitled to be paid out of *Mrs. Penny's* estate.

5. There were two oppositions filed in the District Court, one by *A. Levi, Adler & Co.,* and one by *A. Levi, Bloom & Co.* These two firms were represented by the same counsel in the court below, who have argued the case in this court, as if there were appeals taken on both oppositions. But this appears to be an error.

The motion for appeal, as copied in the transcript, reads as follows :

" On motion of *McVea* and *Muse & Hardee,* of counsel for opposers, it is ordered, that they be allowed an appeal, returnable, &c., on their executing their bond with security, conditioned according to law, in the sum of two hundred and fifty dollars ;" and the bond of appeal filed, is in the name of *A. Levi, Bloom & Co.* alone, as principals.

Upon a very careful examination of this voluminous record, of more than five hundred pages, we find nothing to indicate an appeal by *A. Levi, Adler & Co.* We are, therefore, constrained to consider that firm as not before this court.

*A. Levi, Bloom & Co.* except to the refusal of the District Court to allow the belief of a witness as to the correctness of an account to go to the jury. The ruling of the court was correct. Witnesses should testify to their knowledge of facts, not to their belief of them.

There are two separate oppositions filed in the name of *A. Levi, Bloom & Co.,* the first claiming $4,950, with interest for amount of account for goods sold to *Mrs. Penny's* representatives after her death, namely, from March 3d, 1854, to January 1st, 1855 ; and the second claiming $32 61 for lumber furnished for the use and benefit of the plantation belonging to *Mrs. Penny's succession,* in the months of September and October, 1854.

The last mentioned opposition has been allowed by the District Court; and upon the first, we are of opinion, that *Levi, Bloom & Co.* have made sufficient proof to entitle them to recover of the estate of *Mrs. Penny,* the following items of their account, in addition to what was allowed them by the judgment of the court below :

Vouchers—13, $100; 17, 10 ; 19, 1 50 ; 21, 20 ; 33, 20 ; 34, 5 ; 36, 18 25 ; 37, 16 85 ; 38, 9 ; 39, 26 95 ; 41, 6 25 ; 42, 31 37 ; 43, 10 50 ; 46, 40 80 ; 48, 183 63 ; 51, 173 ; 98, 3 ; 100, 8 72 ; 101, 2, 38 ; 105, 14 ; 106, 5 ; 109, 6 85 ; 110, 6 25 ; 111, 74 82 ; 112, 1 50 ; 114, 5 ; 115, 42 43 ; 117, 25 ; 119, 148 94 ; 120, 4 12 ; 122, 25 17 ; 123 and 124, 4 46 ; 125, 12 81 ; 126, 6 ; 127, 17 50 ; 128, 208 69 ; 132, 6 57 ; 133, 98 90 ; 134, 29 75 ; 136, 11 25—Total, $1,327 06.

We will remark, in illustration of our views in relation to a portion of these

vouchers, that the possession by the drawee, of a draft drawn by a planter upon his merchant or factor, in favor of a third person, is held by us as *prima facie* proof of the draft having been paid by the drawee. *Bell* v. *Norwood*, 7 La. 95.

6. The administrators have appealed from so much of the judgment of the District Court, as maintains the oppositions of *Ellen Gayden* and husband; of *Hazard*, executor of *Radish;* and of *Thomas W. Scott.* The opposition of *Gayden* and of *Hazard*, are based upon mortgages granted by *A. G. Penny* upon slaves belonging to him, in favor of the opponents.

*Mrs. Penny* was a party to the acts of mortgage, for the purpose of renouncing her own mortgage, arising out of dotal and paraphernal rights, in favor of the mortgagees. Subsequently, *Mrs. Penny* sued her husband for separation of property, and obtained a judgment, under which she seized and sold the property mortgaged to opponents, which she bought at Sheriff's sale, retaining in her hands, upon the price of the sale, the amount of the opponent's mortgages recorded.

The counsel of administrators now contends, that *Mrs. Penny's* renunciation of her mortgage, which was anterior in date to that of opponents, was not binding upon her and her representatives; and in support of this position, the learned counsel relies upon the case of *Gasquet* v. *Dimitry*, 9 La. 585.

The decision in *Gasquet* v. *Dimitry*, was pronounced by the Supreme Court in March, 1835, and directly overruled, (although without naming it,) the elaborate decision in the case *Trémé* v. *Lanaux's Syndics*, 4 N. S. 230, which was supposed to have settled the jurisprudence in favor of the binding effect of a renunciation by a married woman. In *Gasquet* v. *Dimitry*, however, it was certainly decided, as is now contended by the counsel for *Mrs. Penny's* administrators, that such a renunciation was equivalent to a suretyship by the wife for her husband, and, as such, was void, by Article 2412 of the Civil Code. A re-hearing was asked, however, in *Gasquet* v. *Dimitry;* and pending this application, the Legislature passed the Act of 27th of March, 1835, by the 2d section of which, married women aged above twenty-one years, were authorized to renounce in favor of third persons, their dotal and paraphernal rights upon the property of their husbands; provided, they were previously informed by the Notary Public receiving such renunciation, of the nature of their rights, out of the presence of their husbands. The re-hearing in *Gasquet* v. *Dimitry*, was only decided in June, 1836, and the original decision was then sustained by a bare majority of the court. And since that time, there has been no question of the right of the married woman, above the age of majority, to renounce her mortgage upon the property of her husband, in favor of a third person. *Brenⁿⁱ˙* v. *Carmouche*, 9 Rob. 37 ; *Succession of Gremillion*, 4 An. 411.

The opponents, *Gayden* and *Hazard*, have prayed, in their answer to the appeal, for an amendment of the judgment, directing the property subject to their mortgages, to be sold for their payment. They are entitled to this relief.

We have not been able to agree entirely with our learned brother of the District Court, in his conclusions upon the oppositions of *Thomas W. Scott.*

It appears from the evidence, that as far back as the year 1842 or 1843, *Albert G. Penny* made his note for fifteen hundred dollars, in payment of the professional services of a gentleman of the bar of East Feliciana, rendered in several suits in which his wife, the deceased *Sarah Ann Penny*, was interested.

This note was negotiated in bank, with the accommodation endorsement of the opponent, *Thomas W. Scott*, and was renewed, with curtailments, from time to

time, until in the year 1853, two different notes, (which represented the last renewals of this original note,) made jointly and severally by *Albert G. Penny* and *Thomas W. Scott*, were paid by the latter, in the hands of two distinct holders. It is not seen how *Mrs. Penny's* estate can be held for these two notes. Granting that the original note of her husband in 1843, was given in payment of a debt for which she was liable, yet the receipt of such note by her creditor was an extinction of her obligation. No subrogation, either legal or conventional, took place in favor of *Scott* to the rights of *Boyle*, the supposed creditor of *Mrs. Penny*. On the contrary, *Penny's* note for fifteen hundred dollars, with *Scott's* endorsement, was received by the bank in part payment of a larger note of *Boyle*, with *Scott's* endorsement, which was held by the bank. *Mrs. Penny* was not a party to the original note or any of its renewals. Were it even proved (which it is not) that *Mrs. Penny* contracted to discharge the notes held by this opponent, such a contract would be clearly illegal, under Art. 2412 of the Code.

It is, therefore, adjudged and decreed, that the judgment of the District Court upon the opposition of *Dr. Huff*, be affirmed ; that the judgment upon the oppositions of *Charles Knapp*, of *Bowman & Gair*, and of *Slark, Day & Stauffer*, be reversed, and that those oppositions be maintained, and the opponents classed as ordinary creditors of the estate of *Sarah Ann Penny*, for the sums respectively claimed by them ; that the appellants, *A. Levi, Bloom & Co.*, have judgment against said estate, as ordinary creditors, for the sum of thirteen hundred and twenty-seven dollars and six cents, with legal interest from judicial demand, in addition to the sum allowed them by the judgment of the District Court ; that the judgment upon the oppositions of *Ellen E. Gayden* and husband, and of *A. Hazard*, executor of *Mary Reddish*, be amended, by decreeing that the property mortgaged to those opponents, be sold in satisfaction of their judgments, and as so amended, be affirmed ; that the judgment upon the oppositions of *Thomas W. Scott*, be reversed, and that the oppositions and claims of the said *Thomas W. Scott*, be rejected.

And it is lastly ordered, that the costs of this appeal be paid, in equal proportions, by the estate of *Sarah Ann Penny*, by *Thomas W. Scott* and by *Dr. Huff*.

MERRICK, C. J., recused himself, as having been of counsel.