The opinion of the court was delivered by
Makr, J.
Dr. Harrison Jordan and his two children, William T. J ordan and Fannie Y. J ordan, wife of William M. Gillaspie, owned in equal portions a large quantity of land, then in Morehouse parish, now *1316 in Richland, cultivated in cotton, together with some seventy slaves, and the necessary stock and farming implements.
In 1859 Mrs. Gillaspie and her brother gave separate powers of attorney to their father, authorizing him to purchase stock in the Citizens’ Bank, and to mortgage their shares in the property as security, and as required by the charter of the bank.
Dr. Jordan purchased of divers persons shares of stock, originally 1000, reduced, in accordance with the amended charter, to 937 shares; and to secure the amount represented by the original stock, $100,000, and such stock loans as they might be entitled to and obtain, Dr. Jordan, in his own right, and as the agent and representative of Mrs. Gillaspie and William T. Jordan, on the 28th June, 1859, executed a mortgage on their lands, part composing the “Trio” plantation, together with the slaves, stock, implements, etc.
As owners of the stock, Dr. Jordan and his children were entitled to a stock loan of $28,000, which they obtained, executing a stock bond, jointly and in solido, for the amount, renewable annually, according to the terms of the charter.
Of the $28,000 some $14,000 were paid to or for the persons from whom Dr. Jordan purchased the stock; and a part, perhaps the whole of the remainder, was put as capital into the firm of Gillaspie, Brewer •& Oo., commission merchants of New Orleans, established about July, 1859, composed of William M. Gillaspie, James Brewer, and Harrison Jordan. This partnership terminated in March, 1861, and was succeeded by Gillaspie, Jordan & Co., W. T. Jordan taking the place of Brewer.
Mrs. Gillaspie died about June, 1870, leaving two minor children, Dannie T. and William Gillaspie, and their father, William M. Gillaspie, surviving; and Dr. Harrison Jordan died about December, 1871, both he and his daughter intestate.
The domicile of Dr. Jordan and of his children was in Louisiana from 1858 until the death of the daughter and her father. There was no administration of their respective estates. The two children of Mrs. Gillaspie were the heirs of their mother, and they are co-heirs of their uncle, William T. Jordan, in the succession of Dr. Harrison Jordan.
In December, 1871, the Citizens’ Bank filed a petition, alleging the indebtedness of Dr. Harrison Jordan, William T. Jordan, and Dannie Yirginia Jordan, wife of William M. Gillaspie, in the sum of $25,000, balance of the stock loan of $28,000, with ten per cent interest from the first of January, 1863, secured by mortgage and by pledge of the 937 shares of stock; and praying for the seizure and sale of the mortgaged property and pledged stock. No mention is made of the death of Mrs. Gillaspie or of Dr. Jordan; but the petition alleges that William T. Jor *1317 dan is the actual possessor of the mortgaged plantation, and prays that demand of payment and notice of seizure be served on him. The judge granted the order, and directed that “ notice of this order of seizure and sale be given to William T. Jordan, actual possessor of the mortgaged property,” which was accordingly done.
The sale was made on the third of February, 1872, and the mortgaged property and the stock were adjudicated to the bank at the price of $20,000, being two thirds of the appraisement. Pursuant to this adjudication, the sheriff conveyed the property to the bank, with all the rights “which the former owners, Harrison Jordan, Mrs. Fannie Virginia Gillaspie, and William T. Jordan, had in and to said property.”
The bank did not take possession ; and it seems to have been understood that the parties in interest should redeem the property. In June, 1872, Mrs. Jordan brought suit against her husband for a separation of property, alleging his embarrassment, and that she was a professional teacher when she was married, that she had supported herself, and was still able to do so. , Service was accepted, the petition was filed, put at issue, and judgment of separation rendered and signed, all on the same day. The evidence offered was the testimony of a single witness, proving that Mrs. Jordan was a teacher, had taught school at his house, and in his opinion was capable of supporting and providing for herself.
Whatever may have been the intentions of these parties originally, there was an agreement in writing between Jordan and Gillaspie, dated January 14, 1874, that the title to the property sold to the bank in February, 1872, which was purchased by them from the bank after that sale, should be one undivided half to W. T. Jordan, one undivided fourth to Gillaspie, and one undivided fourth to his children, William and Fannie T. Gillaspie.
On the fourth of May, 1875, the Citizens’ Bank sold and conveyed to Mrs. Jordan, separate in property from her husband, by judgment, the entire mortgaged property and bank stock, for the sum and price of $33,987, of which $8665 in cash, a note to her own order for $13,322, bearing interest at eight per cent, with the privilege of extending the payment from year to year, on paying the interest, and the sum of $1903 of the principal, and the remainder, $12,000, in a stock note, renewable* and bearing ten per cent interest.
William M. Gillaspie having qualified as guardian of his two children in March, 1876, brought this suit in order, as stated :
1st: To annul the sale made by the Citizens’ Bank, on the fourth of May, 1875, to Mrs. E. F. Jordan ;
2d: To annul the judgment separating Mrs. Jordan and her husband, so far as it may prejudice plaintiff’s rights ;
3d: To annul the sale made by the sheriff to the bank on the third of February, 1872;
*1318 4th: To annul the mortgage of the 28th June, 1859, in favor of the Citizens’ Bank, on general grounds applicable to the whole contract and special grounds applicable to the one undivided third of Mrs. Gillaspie in the Trio plantation ;
5th: To have plaintiff, in his capacity of guardian, recover for the minors and obtain possession of one undivided third of the plantation, as heirs of their mother, and one undivided half of one undivided third, as heirs of their grandfather, Harrison Jordan.
The bank excepted that plaintiff was not guardian; and this was overruled on the production of authentic proof of his appointment as such by the proper court in Mississippi. The . bank excepted on other grounds, one of which was that the court was without jurisdiction so far as the demand of plaintiff for rents an’d for the value of the personal property sold under the mortgage is concerned, the domicile of the bank being in the parish of Orleans ;
2d: Prescription of one, three, four, five, and ten years ;
3d: That the heirs of Mrs. Gillaspie can not maintain an action to recover the property without tendering at least the one third of the debt to the bank for which she was liable in sólido, viz., $9333 33 ;
4th: That they can not maintain a suit for the ownership and possession of the property of their ancestor, Harrison Jordan, without paying the debts;
5th: That out of the bid by the bank, $20,000, the costs, taxes, and $19,392 73 of the debt due on the property, were paid, which sums have neither been refunded nor alleged to have been offered ;
6th: That plaintiff does not allege that the minors have accepted the succession of their mother unconditionally, as in fact they have not done.
The bank also answered, giving the entire history of this business, which we have endeavored to condense.
Mrs. Jordan by way of exception alleges the reality of the judgment of separation; and that it can not be attacked collaterally. She also pleads the prescription of one, two, three, four, and ten years ; and she charges that Gillaspie was well aware of the rendition of said j udgment, and took an active interest in having it rendered ; and that his attack on it is in bad faith and fraudulent.
She also alleges that she has reduced the original mortgage by payment of interest and part of the purchase price more than $12,000 ; and that it is inconsistent and illegal pleading for plaintiff to claim one half the property without first having said mortgage annulled and canceled, or without first tendering to her the one half of the amount which she has paid in reduction of the mortgage.
She also answers, stating the history of her connection with the property ; and concluding with a prayer that in the event of her eviction *1319 •she be not turned out of possession until the sum of $13,218 95, expended by her for taxes and improvements, be re-imbursed, with interest.
William T. Jordan answers at length, alleging advances made to the mother of the minors, and large payments made by him for taxes in 1869.1870.1871, for levees, etc., and to the bank, for which he prays for judgment in reconvention.
The judgment of the district court recognized the minors as heirs of their mother and of their grandfather, and decreed them to be owners of one half the property in indiviso. It also decreed the nullity of the ■sale to the bank of February 3,1872, as well as of the sale by the bank 4o Mrs. Jordan, May 4,1875 ; and condemned the bank and William T. Jordan, in solido, to pay rent at the rate of $1500 per year from December 27.1871, to May 4,1875, and the Citizens’ Bank and Mrs. Jordan to pay, in solido, rent at $1500 a year from May 4, 1875, until delivered, being the one half of the rental value of the property.
From this judgment all the defendants appealed : and the plaintiff, in his answer, asks that the judgment be so amended as to decree the nullity of the mortgage of June 28, 1859, as a whole, and specially as to the one-third interest of Mrs. Gillaspie ; and that the judgment of separation be decreed a nullity in so far as it affects the rights of the minors.
So far as the exception of want of tender is concerned, but little need be said. The case is not analogous to that in which a third person, a .stranger, buys at a j udicial sale, and pays the price, which is used in discharging liabilities for which the heirs were bound. The bank, the seizing creditor, was the adjudicatee; and the debt was not actually paid.
As to the same plea set up by Mrs. Jordan, her purchase from the bank was at private sale ; and she can not invoke the rules applicable to judicial sales. Moreover, and this is true with respect to both these parties, these minor children can not recover and obtain possession of the property. The law makes them beneficiary heirs; and they can only receive their share of the residuum after the payment of the debts of the two successions.
The pleas of prescription need not now be noticed, nor the other exceptions specially. The beneficiary heirs, while they can not be allowed to recover and obtain possession until the debts are paid, may .certainly maintain any action that may be necessary either to reduce ■¡the amount of the debts of the succession, or to bring into it property which belongs to it which may be in the possession of and claimed by ■others.
With respect to the rents of this property, as these heirs are beneficiary heirs the rents do not belong to them: they belong to th.e successions of their mother and grandfather: and will be assets for the payment of the debts, if such rents are due and recoverable.
*1320 As to the mortgage of June 28,1859, we can not imagine what law is violated by it. The bank did not sell the stock to Dr. Jordan and his-children. The owners of the stock sold it with the consent of the bank. So much of section four of the charter as declares that the mortgages-given by the stockholders shall remain as a perpetual pledge to the-holders of the bonds, etc., must be construed in connection with section. 28, which specially authorizes the stockholders to sell and transfer their-stock, provided the proposed transferee “shall furnish a mortgage to-the satisfaction of a majority of the directors.”
There is nothing in the law, nor is there any thing in the charter,, which forbids women, married or single, to become stockholders, and to-mortgage their property to the bank. Section 25 of the charter enables-wives to bind themselves conjointly and in solido with their husbands and to renounce, cede, mortgage, and hypothecate their rights, privileges, or property; as well dotal, as of any other nature or kind.
This section must be construed with reference to the general laws,, which forbid the wife to bind herself or her property for the debts of the husband. The charter of the bank does not profess to repeal these-general laws; and it simply enables the wife to mortgage her property and to bind herself conjointly and in solido with her husband when she-exercises her lawful right and becomes a stockholder.
The power of renunciation was necessary, or thought to be so, because, at the time this charter was adopted, April, 1833, the opinion prevailed to some extent that the wife was forbidden by article 2412 of the O. C. to renounce, in favor of the mortgagee or vendee of her husband, her matrimonial rights on his property. In Gasquet vs. Dimitry, 9 La. 585, decided in June, 1836, this court so decided, after able and exhaustive argument, Judge Mouton dissenting. The Legislature put the matter at rest by the act of 1835, p. 153, which is the existing law What this section 25 of the charter means is that the wife may mortgage-her property and bind herself with her husband when she owns the-stock; and that she may renounce her matrimonial rights when her-husband owns the stock and mortgages his property.
The last clause of section 24 of the charter has been evidently misinterpreted by the defendants. It declares that “ all property mortgaged to said corporation, for any purpose, may be seized and sold at any time, according to law, in whatsoever hands or possession the same-may be found, notwithstanding any alienation thereof, or change of possession by succession or descent to heirs or legatees by last will and testament, or otherwise, in the same manner as if the same was in the-possession of the original mortgagor.”
To understand the meaning of this clause in the charter we must, recur to the jurisprudence then existing.
*1321 As late as 1843, in Erwin vs. Lowery, vi. Rob. 28, this court held thatexecutory process could not issue where the mortgagor was dead : and in the case of Lowery vs. Erwin, vi. Rob. 192, the court decided that the-order of seizure and sale can not issue against a succession in course of administration.
Boguille vs. Faille, 1 An. 205, decided in 1846, settled the law differently. The court said the mortgage creditor was entitled to go into the-courts of ordinary jurisdiction and have the mortgaged property seized', and sold; and subsequent jurisprudence has confirmed this doctrine.
Section 24, therefore, means that the bank shall have the right, which: without such special law it would not have been permitted by the courts-at that time to exercise, to seize and sell the property mortgaged to it,., although the mortgagor be dead, and his succession in process of administration. According to the present jurisprudence, the pact de non alienando secures to the mortgage creditor all that this clause in the charter secured to the bank ; but, as we have seen, for more than ten years after-the granting of this charter the courts maintained that, in case of death the mortgage creditor was compelled to go into the probate court and there enforce his rights “ in concurso according to his rank in relation to the other creditors, and in due course of administration.” VI. Bob.. p. 28.
It never was intended, by this section 25, to permit the bank to seize- and sell the mortgaged property otherwise than “according iolaw;’7’ that is, in accordance with the laws governing this form of proceeding. The Code of Practice requires notice to the debtor, which is given by serving on him a copy of the order of seizure and sale. If he be absent- and not represented, the court must appoint an attorney to represent him, to whom notice must be given, and contradictorily with whom the seizure and sale shall be prosecuted. Articles 735, 736,737. If the debtor-be dead, notice must be given to his legal representative, executor, administrator, tutor of the heirs, whoever actually administers the succession, or to the heirs, where they are of age, have accepted, and are in possession. Dupuy vs. Bemiss, 2 An. 509; Nicholls vs. Grice, 6 An. 446; McCalop vs. Fluker, 12 An. 551.
No law authorizes service of notice on the “actual possessor” of" the property. The notice is in lieu of the citation which would be required in an ordinary action ; and it must be served on a person on-whom citation might have been served in an action against the mortgagor in personam.
The plaintiff and his wards have no interest to demand the nullity of the judgment of separation between Mrs. Jordan and her husband “ and they have no right to demand and recover either the shares of the-property inherited by them, or any aliquot part of the rents which may *1322 be chargeable against those who have occupied the land. It is indispensable that there should be an administration of the successions of Mrs. Fannie Virginia Gillaspie and of her father; that the claims of the creditors of both be adjusted ; and that the demands of the one of these successions against the other, and of these successions against others, be settled in due course of, administration.
It is therefore ordered, adjudged, and decreed that the judgment of the district court be amended so as to read thus: “ That the sale b.y the sheriff to the Citizens’ Bank on the third day of February, 1872, in the suit by executory process, No. 193 of the docket of the district court in and for the parish of Richland, entitled the Citizens’ Bank of Louisiana vs. H. Jordan, Wm. T. Jordan, and Mrs. F. V. Gillaspie and Husband, •and the sheriff’s deed to the bank of date February 7,1872, in confirmation of the said sale, be and the same are hereby declared to be null, void, and of no effect; that the sale and conveyance made by the Citizens’ Bank of Louisiana to Mrs. Elizabeth F. Harrison, wife of William T. Jordan, passed before Felix Grima, notary public, of the city of New Orleans, on the fourth day of May, in the year 1875, be and the same is hereby declared to be null, void, and of no effect: that the property in the said sheriff’s deed and in the said conveyance of May 4, 1875, mentioned and described be and the same is hereby declared to be the property of William T. Jordan, to the extent of one undivided third; of the ■succession of Mrs. Fannie Y. Gillaspie, to the extent of one undivided third; and to the succession of Harrison Jordan to the extent of one undivided third ; that the mortgage of date June 28, 1859, granted by .Harrison Jordan, Wm. T. Jordan, and Mrs. Fannie Y. Gillaspie, then wife of William M. Gillaspie, to the Citizens’ Bank of Louisiana, by act .passed before Adolphe Bmdousquie, notary, of the city of New Orleans, be re-instated, and declared to have all the force and effect which it had at the date of the filing of the petition of the Citizens’ Bank in the suit No. 193 of the docket of the district court in and for the parish.of Rich-land, that is, on the 20th day of December, 1871; that the rights of the succession of Mrs. Fannie Y. Gillaspie and of the succession of Harrison Jordan to sue for and to recover the rents and revenues of the Trio plantation of and from the Citizens’ Bank and William T. Jordan and Mrs. Elizabeth F. Harrison, wife of William T. Jordan, for and during .the time that they, or any of them, have claimed to o.wn or have used •and occupied the .same, be and the same are hereby reserved ; that as thus amended the said judgment be affirmed; that the said judgment appealed from be and the same is hereby in all other respects annulled, avoided, and reversed ; and that plaintiff, appellee, pay the costs •of this appeal, and that defendants, appellants, pay the costs in the •district court.